THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.*
NICOMEDES FELICIANO, Defendant and Appellant.

No. 6962. Argued June 16, 1938.—Decided July 6, 1938.

*Pedro M. Porrata* for appellant. *R. A. Gómez, Prosecuting Attorney,*
and *Luis Janer, Assistant Prosecuting Attorney,* for appellee.

MR. JUSTICE DE JESÚS delivered the opinion of the court.

The District Attorney of Ponce filed an information
against Nicomedes Feliciano charging him with the crime of
rape committed by having malicious and criminal sexual inter-
course with Angela Nieves Almodóvar, who was under four-
teen years of age and was not his wife, on or about the
20th of October, 1935, in the Municipality of Yauco. After
a trial by jury he was found guilty of the charge. He moved
for a new trial which was denied and thereafter was sen-
tenced to one year imprisonment at hard labor. The present
appeal was taken from said judgment.

The appellant assigns three errors in his petition for a
reversal of the judgment, to wit:

*"First.*—The District Court erred in failing to direct a verdict
of not guilty as a result of the lack of authentic evidence of the
crime of rape.

"*Second.*—The District Court erred in instructing the jury on the question of the necessity that the testimony of the victim of the crime of rape must be corroborated by other evidence.

"*Third.*—The District Court erred in refusing to give the defendant a new trial."

From the evidence it appears that for more than seventeen years the defendant Nicomedes Feliciano had lived with Dolores Nieves, an aunt of the victim, in a state of concubinage; that on or about October 20, 1935, Dolores left for the movies about 3:30 in the afternoon leaving the defendant asleep at her house with the doors open. She abandoned the idea of going to the movies and when she returned to the house she found that the doors were closed. She looked in through a crack and saw a young girl sitting on the bed where she had left her lover, with her back towards the place from which she was looking. She did not recognize the girl for the moment and then called her neighbor, Rosa Julia Padilla, in order that she might identify her. The person sitting on the bed turned out to be her niece, Angela Nieves. Rosa Julia returned to her house and Dolores made them open the door and allow her to enter into her own house. When she confronted Angela and Nicomedes who opened the door, and asked the former the reason for her presence at the house in her absence, she answered: "I am here because I have come to your house at other times." At the same time Nicomedes, addressing himself to Dolores, ordered her to keep quiet. Dolores further testified that Angela lived at some distance from her house, about four houses away, and that these houses are very close to one another.

Rosa Julia Padilla testified that at the instance of Dolores she observed through a crack in the wall that there was a young girl sitting in Dolores' bed and that she turned out to be Angela Nieves; that she was unable to see the defendant, and that she left immediately for her own house.

Juan Nieves, the father of the prosecutrix, took the witness stand and testified that his daughter was born in Yauco;

that she had never married; that she is not over twelve years of age; that her mother's name is Juana Almodóvar; and that his paternal and maternal grandmothers are named Cruz Nieves and Juana Almodóvar, respectively.

A certificate issued by the demographic registrar and head of the Civil Registry of Yauco was introduced in evidence, from which it appears that Angela is the legitimate daughter of Juan Nieves and Juana Almodóvar and that she was born in Yauco on October 2, 1923, and therefore was twelve years old on the date that the acts charged against the defendant took place.

The victim testified that on October 20, 1935, she was at the house of the defendant and, when questioned by the prosecution, she answered:

"He was at my house and he told me to go to his house and I went and when I went there he took and laid me on the bed and took off my bloomers and climbed on top of me and introduced that part which men use for urinating into mine and later sat me on his lap."

She continued to testify that she went to the house of the defendant because the latter forced her to, threatening to give her father a certain paper writing which he had and which apparently was against her interests. She further stated that on several prior occasions she had done the same acts with the defendant and with another man.

Dr. Julio Roca testified that he practices his profession in Yauco; that he examined the girl Angela Nieves at the request of the municipal judge, that externally her genital organs had not developed complete maturity; that they did not have the development common to a woman and he observed that the hymen had disappeared; that the vagina was quite spacious and the walls did not touch, a fact which showed that she had had sexual intercourse several times.

This was the evidence for the prosecution in this case.

The evidence for the defendant consisted in the testimony of Dolores Nieves and in that of the defendant himself. Dolo-

res Nieves, in answer to questions put to her by the defendant, testified that she is the sister of Juan Nieves, the father of the victim, and that it is true that after she testified before the Municipal Judge of Yauco with regard to the facts of this case, Juan Nieves, in a drunken state, had threatened her because they had told him that she was going to testify against his daughter, requesting that she testify in her favor; that the witness then went to the Municipal Judge of Yauco, informing him of what had happened, and that this official advised her not to worry and that she should testify as she had done before him. On cross-examination by the prosecution, the witness asserted that her testimony before the district court was the truth and nothing but the truth and exactly the same as the one given before the municipal judge.

The defendant testified, after being informed by the court of his privilege to abstain from taking the stand, that his wife, Dolores, had left for the matinée and that since he had had a bad night, he went to bed and while lying there Angela arrived and sat on the edge of the bed and while she was sitting there Dolores arrived. That the latter asked the girl what she was doing there and she answered that she was doing nothing, that she had gone there many times before and that nothing had happened to her; that the girl left quietly; that when the girl arrived he was lying down and got up and that he was alone in the house.

Such was the evidence for the defense.

Let us now see whether the errors assigned by the defendant have been committed.

From the preceding statement of facts it appears clearly that the prosecuting attorney established a *prima facie* case of rape. The statements of the girl and of Dr. Roca tend to show that there was a rape, and those of Dolores Nieves and of Rosa Julia Padilla tend to connect the defendant with the commission of the crime, thus supplying the corroboration required by section 250 of the Code of Criminal Procedure.

Consequently the court acted correctly in submitting the case to the jury. The first error, therefore, is nonexistent.

 We can not say as much regarding the second error.

The trial judge, in his instructions to the jury, when referring to the evidence of corroboration required by law, expressed himself as follows:

"According to the law, in cases of rape the defendant can not be convicted upon the sole testimony of the woman offended unless her testimony is corroborated by other evidence. The corroborative evidence need not by itself show all the elements of the crime; but it must always tend to connect the defendant with the crime charged. In other words, gentlemen of the jury, corroborative evidence does not need to come, of course, from persons who have witnessed the commission of the carnal act, but may be any kind of evidence which satisfies the gentlemen of the jury of the connection of the defendant with the crime charged against him. *Expert medical testimony as to whether or not the girl was raped can serve as corroborative evidence.* Testimony of persons who saw the defendant with the girl at the time that the act charged was committed and any other evidence may also serve the purpose." (Italics ours.)

The instruction above transcribed is manifestly erroneous and prejudicial to the rights of the defendant. As the trial judge very well said, the corroborative evidence must tend to connect the defendant with the crime charged. But in instructing the jury that "expert medical testimony as to whether or not the girl was raped can serve as corroborative evidence," he made the mistake of confusing the two distinct elements which must be considered by the jury in weighing the evidence in every case of rape: (a) the evidence tending to show that the victim was raped and (b) that evidence which in addition to the testimony of the victim is introduced for the purpose of connecting the defendant with the commission of the crime. The testimony of Dr. Roca solely and exclusively tends to show that the girl had been raped, but in no way connects the defendant with the commission of the offense.

The corroborative evidence which connects the defendant with the commission of the crime is to be found in the testimony of Dolores Nieves and Rosa Julia Padilla. It was incumbent upon the members of the jury to weigh this testimony and if believed to determine whether it sufficiently connected the defendant with the commission of the crime. Upon their conclusion on these two particulars necessarily depended their verdict. If they did not believe this testimony or if believing it they felt that it did not connect the defendant sufficiently with the commission of the crime, in either of these two cases the verdict should have been in favor of the defendant. But once the court instructed them that expert medical testimony could serve as the corroborative evidence required by law, the verdict could not be affected at all by the analysis which the jury should make of the testimony of Dolores and Rosa Julia, inasmuch as in accordance with the instruction of the court, the testimony of Dr. Roca would supply to them the corroboration required by section 250 of the Code of Criminal Procedure, and therefore, even though the testimony of Dolores Nieves and Rosa Julia Padilla should be discarded, there would be sufficient evidence to uphold the verdict of guilty. But that is not the law. In discussing the probative value of the medical report in these cases, this court through an opinion of its Associate Justice Wolf, has said:

"The mere fact that the witness has been violated, if she was violated, does not tend to show that the defendant was guilty, and *the testimony of the doctor merely tends to show that some one had venal access to her.*" (Italics ours.) *The People* v. *Maldonado,* 17 P.R.R. 22, 27.

What has been expressed leads us to the irresistible conclusion that the second error assigned was committed, and as it was obviously prejudicial to the interests of the defendant, the reversal of the judgment is imperative.

From the record it does not appear that any appeal was taken from the decision denying the motion for a new trial;

but assuming that such an appeal was taken, the conclusion at which we have arrived in considering the second assignment relieves us of the necessity of discussing the third, for as the case must be returned to the lower court for a new trial, any discussion upon such decision would be academic.

The judgment appealed from should be reversed and the case remanded to the lower court for a new trial.

Mr. Justice Travieso took no part in the decision of this case.